**Edgar Harold TEAGUE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16270.**

United States Court of Appeals
Ninth Circuit.

July 27, 1959.

---

Roos, Jennings & Haid, Leslie L. Roos, John Victor Tilly, San Francisco, Cal., for appellant.

Lynn J. Gillard, U. S. Atty., Bernard Petrie, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before STEPHENS, HAMLEY, and JERTBERG, Circuit Judges.

**HAMLEY, Circuit Judge.**

Edgar Harold Teague appeals from his conviction and sentence on a charge of stealing goods which had been placed on a wharf as part of a foreign shipment.[1] Two questions are presented here. The first is whether the trial court committed reversible error in receiving in evidence a Japanese weighmaster's certificate. The second is whether the court erred in denying Teague's motion for judgment of acquittal.[2]

Teague was convicted of stealing five coils of used copper wire. Early in 1957, Federated Metals Company of San Francisco sold 186 coils of used copper wire to a broker in New York. The broker in turn sold the wire to the Tatsuta Industrial Company in Japan. On March 6, 1957, Federated Metals sent the 186 coils by truck to pier 50 of the American President Lines in San Francisco. Each coil had attached to it a shipping tag showing the destination as Kobe, Japan.

Presumably the entire 186 coils were loaded aboard the SS. President Taylor on March 8, 1957. However, the coils were not counted individually during loading. That vessel sailed for Japan on the following day. On March 7, 1957, however, five coils resembling those shipped were found in Teague's station wagon outside the Richmond Iron and Metal Company yard in nearby Richmond, California. A tag marked "FH 3916, Kobe, No. 174," was found with these five coils and was identified as the tag which had been affixed to the one hundred seventy-fourth coil in the shipment.

Teague was employed as a painter leaderman by American President Lines. On March 6, 1957, he parked his car near the place on the pier where the coils were stored and reported for work. He testified that as he drove home from work that day he found the five coils lying in

1. The prosecution was brought under 18 U.S.C.A. § 659.

2. Pursuant to Rule 29, Federal Rules of Criminal Procedure, 18 U.S.C.A., this motion was made at the close of the evidence and, after being denied, was timely renewed after discharge of the jury.

the roadway at the intersection of two streets a few blocks from pier 50. It was his testimony that he placed the wire in his car with the possible intention of selling it. On the following day, and at Teague's direction, Teague's stepson took the five coils to the Richmond Iron and Metal Company to obtain a price. It was here that the five coils were discovered by a police officer.

Upon request of American President Lines, the coils of wire aboard the President Taylor were counted at Yokohama. Only 181 coils were found. However, a subsequent check at Kobe showed a total of 186 coils were then aboard the vessel.

It is the Government's theory that some confederate of Teague's must have made little coils out of big coils during the ship's passage from Yokohama to Kobe. In support of this view, the Government introduced evidence pertaining to the weight of the wire. This evidence tended to show that the total shipment weighed 22,000 pounds when it left Federated Metals and that it weighed 21,501 pounds when it reached Kobe. The five coils found in Teague's station wagon weighed about 500 pounds.

The only evidence of the weight of the wire when it reached Kobe was a Japanese weighmaster's certificate. This paper was offered and received in evidence as a business record, pursuant to 28 U.S.C.A., § 1732. During oral argument before this court, however, counsel for the Government conceded, with commendable frankness, that the certificate was not admissible as a business record.

It is argued, however, that the certificate was nevertheless admissible under the doctrine of curative admissibility. Under this doctrine, as usually applied, where incompetent and irrelevant evidence is received without objection by the opponent, the opponent may reply with similarly inadmissible evidence whenever it is needed to remove an unfair prejudice which might otherwise ensue from the original evidence.[3]

As a basis for applying this doctrine here, the Government refers to the fact that Teague's attorney cross-examined a Government witness concerning a cargo boat note which showed that 186 coils had been unloaded at Kobe. The Government contends that this cargo boat note, which was later introduced in evidence, was no more admissible than the weighmaster's certificate. The certificate was therefore admissible, the Government argues, to rebut or supplement the cargo boat note.

■ There are at least two reasons why the doctrine of curative admissibility has no application here. First, the ground of inadmissibility which may be overlooked where the doctrine applies has to do with competency, relevance, and materiality, whereas one reason the weighmaster's certificate was excludable was that it had not been identified by any witness. Second, the cargo boat note was not inadmissible—it had been identified and authenticated as a business record.

■ We therefore conclude that the weighmaster's certificate was inadmissible. Contrary to the Government's position, we also believe that the admission of this document was prejudicial. It added substantial support to the Government's theory that someone tampered with the coils of wire on the voyage between Yokohama and Kobe. It was essential for the prosecution to establish this theory in order to prove the corpus delicti. If 186 coils of the same weight as when shipped were unloaded at Kobe, the charge that Teague stole five coils of this wire in San Francisco could not be sustained.

■ In our opinion, however, there was substantial evidence apart from the weighmaster's certificate to support the jury verdict. The five coils of wire were found in Teague's possession. With them was a shipping tag which was identified as one which had been originally attached to a coil in the shipment. Teague had access to the wire while it was on the wharf. He attempted to make an immediate disposition of the wire after as-

---

3. See Meyers v. United States, 9 Cir., 147 F.2d 663, 667; 1 Wigmore on Evidence (3d ed.) § 15(3), p. 307.

928

sertedly finding it on the street. There was no explanation as to how the five coils came to be on a roadway several blocks from the wharf after all 186 coils had been counted there. Only 181 coils were found on board the President Taylor after a careful search and count at Yokohama.

These facts, considered with other evidence in the case and apart from any evidence as to weight, would have warranted a jury finding that someone had made the 181 coils found at Yokohama into the 186 coils found at Kobe. Accordingly, the trial court did not err in denying the motion for judgment of acquittal.

The judgment is reversed and the cause is remanded with directions to grant appellant a new trial.